**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EUGENE LOGAN, R32033,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  3:13-cv-01163-JPG-PMF** |
| | ) | |
| **LORI A. CADY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court are the defendants' Motions for Summary Judgment (Docs. 42 and 45).[1] The defendants argue that the plaintiff failed to exhaust administrative remedies prior to filing suit. Plaintiff filed responses in opposition (Docs. 48 and 49). Plaintiff Eugene Logan is an inmate with the Illinois Department of Corrections ("IDOC") at Menard Correctional Center ("Menard"). He filed this lawsuit pursuant to 42 U.S.C. § 1983 on November 12, 2013 claiming that various IDOC and Wexford Health Sources, Inc. employees violated his constitutional rights. Plaintiff proceeds on the following claims:

**Count 1:** Nurse Lori A. Cady was deliberately indifferent to Plaintiff's medical needs, motivated by racial animus, in violation of the Eighth and Fourteenth Amendments;

**Count 2:** Sgt. Frank B. Eovaldi assaulted Plaintiff in violation of the Eighth Amendment;

**Count 3:** C/O Mayberry assaulted Plaintiff in the health care unit and in the shower, in violation of the Eighth Amendment;

---

[1] The parties' pleadings did not present any genuine disputes of material fact and so the Court declined to hold a *Pavey* evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

**Count 4:** Dr. John Shepard was deliberately indifferent to Plaintiff's medical needs, in violation of the Eighth Amendment; and

**Count 5:** Lt. John Doe was deliberately indifferent to Plaintiff's medical needs, in violation of the Eighth Amendment.

For the following reasons, it is recommended that the defendants' motions for summary judgment be DENIED.

According to the plaintiff's complaint, on August 20, 2012, Menard correctional officers conducted a shakedown of the west cell house. As the cells were being inspected, the plaintiff, along with many other inmates, waited in the prison chapel. While waiting in the chapel, plaintiff sought medical assistance from defendant Nurse Cady. Nurse Cady declined to assist the plaintiff. After being denied medical care, and while still in the chapel, the plaintiff was struck in the head by defendant Sgt. Eovaldi. The plaintiff was then taken to the health care unit ("HCU") where he was assaulted by defendant C/O Mayberry.

The plaintiff was examined at the HCU by defendant Dr. Shepard, and then escorted to the shower area by defendant C/O Mayberry. C/O Mayberry assaulted the plaintiff again in the shower area as an unidentified Lieutenant observed the assault. Dr. Shepard again examined the plaintiff the following day. X-rays were taken, and a "non-displaced nasal bony fracture" was diagnosed on August 23, 2012. Despite complaints of pain, Dr. Shepard declined to prescribe the plaintiff pain medication for more than a month.

On August 27, 2012 the plaintiff filed an emergency grievance regarding these incidents. Emergency grievances are sent directly to the Warden of the institution, and on August 29, 2012 the Warden denied the grievance as a non-emergency. On September 4, 2012 the grievance was transferred to Counselor Owens. In the "Counselor's Response" section of the grievance, Owens

wrote; "Grievance reviewed w/ internal affairs and offender's complaint will be looked into." On September 12, 2012 the grievance was returned to the plaintiff.

The record is not entirely clear as to what happened next, but on January 6, 2013 the plaintiff sent a letter to his grievance officer asking for a status update on his August 27 grievance. The grievance officer, "M. Phoenix" responded by telling the plaintiff that his August 27, 2012 grievance was denied as a non-emergency. The grievance officer went on to state that he should have submitted the grievance through the normal non-emergency grievance process, but the time period to do so had already lapsed. Approximately one month later, the plaintiff submitted his grievance to the IDOC Administrative Review Board ("ARB"). On June 10, 2013 ARB denied the grievance because the plaintiff did not attach a response from the grievance officer or the Warden.

The defendants now seek summary judgment on the basis that the plaintiff failed to exhaust administrative remedies prior to filing suit.  Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a). The reviewing court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

Inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before filing a lawsuit. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Inmates must follow all grievance rules established by the correctional authority. *Id*. However, "[e]xhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id*.

For non-emergency grievances, the Illinois Department of Corrections ("IDOC") has a three-step process that prisoners are required to follow in order to exhaust administrative remedies. At step one, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.

At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the prison Grievance Officer within sixty (60) days of discovery of the dispute. *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Warden (also known as the Chief Administrative Officer or "CAO"). *See* 20 Ill.Admin.Code § 504.830.

The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. 20 Ill.Admin.Code § 504.850. The Director of IDOC and the ARB are required to make a "final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id*. Administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

The process for emergency grievances is slightly different. Emergency grievances are forwarded directly to the Warden, and "if the [Warden] determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." 20 Ill. Admin. Code § 504.840. If the CAO makes a determination that the grievance is not of an emergency nature the plaintiff may appeal the CAO's decision directly to the ARB. 20 Ill. Admin. Code. § 504.840, *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir.2005). The plaintiff is not required to resubmit an emergency grievance

4

through the normal non-emergency process. *See Thornton*, 428 F.3d at 694; *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("In *Thornton* … we explained that an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary.").

In the present case, the plaintiff received misleading information in response to his August 27, 2012 grievance. Although the Warden denied the grievance as a non-emergency, the plaintiff's counselor stated that the grievance was being reviewed by prison internal affairs and "will be looked into." This placed the plaintiff's grievance in a paradoxical state where it was seemingly both denied *and* under investigation. The plaintiff presumably took the counselor at his word and assumed that his grievance was being looked into. When he drafted a letter to the grievance office on January 6, 2013 to ask for an update, the plaintiff was told that his grievance was time barred and that "we have nothing on file in office for you."

Prisoners are only obligated to exhaust administrative remedies that are available to them. *See Dole*, 438 F.3d at 813. Here, the counselor may not have intentionally tried to obstruct the plaintiff's grievance process, but the process was essentially thwarted when the plaintiff was given conflicting information. Moreover, the grievance served its purpose. The warden was made aware of the issue, internal affairs was investigating the issue, and the plaintiff's counselor was notified. Additionally, the plaintiff submitted the grievance to the ARB shortly after receiving notice that the Menard grievance office considered his grievance time barred. In sum, the plaintiff was provided conflicting information that obstructed his grievance process, and therefore the defendants' affirmative defense fails.

## <u>RECOMMENDATIONS</u>

It is RECOMMENDED that the defendants' motions for summary judgment (Docs. 42 and 45) be DENIED.

**SO RECOMMENDED.**

**DATED:** <u> March 27, 2015 </u>.

*<u>s/ Philip M. Frazier</u>*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
