IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EUGENE LOGAN, R32033, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 3:13-cv-01163-SMY-PMF |
| | ) |
| LORI A. CADY, | ) |
| FRANK B. EOVALDI, | ) |
| C/O MAYBERRY, | ) |
| DR. JOHN SHEPARD, and | ) |
| JOHN DOE, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Eugene Logan is an inmate with the Illinois Department of Corrections ("IDOC"), currently housed at Menard Correctional Center. Logan asserts that his Eighth Amendment rights were violated when he was assaulted by prison correctional officers on August 20, 2012, and denied adequate medical treatment for his resulting injuries. Logan filed suit on November 12, 2013. (Doc. 1). On December 11, 2013, Judge Gilbert screened Logan's Complaint pursuant to 28 U.S.C. § 1915A (Doc. 8) and held that Logan articulated the following claims:

> Count 1: Against Nurse Lori A Cady - deliberate indifference to Plaintiff's medical needs in violation of the Eighth and Fourteenth Amendments;
>
> Count 2: Against Sgt. Frank B. Eovaldi - assault in violation of the Eighth Amendment;
>
> Count 3: Against C/O Mayberry - assault in violation of the Eighth Amendment;
>
> Count 4: Against Dr. John Shepherd - deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment;

>Count 5: Against Lt. John Doe - deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment.

Defendants John Shepherd and Lori Cady now seek summary judgment. (Docs. 69 and 78). For the following reasons, Defendants' motions are **GRANTED**.

## BACKGROUND

The following facts are taken from Plaintiff's deposition, unless otherwise noted. Plaintiff Eugene Logan has been an inmate with the IDOC since 2004. (Logan Dep., Doc. 70-1 at 2). After approximately seven years at Stateville Correctional Center, Logan was transferred to Menard Correctional Center ("Menard") in July, 2011. *Id*. The incidents that give rise to this litigation occurred at Menard. *Id*.

On August 20, 2012, the IDOC "Orange Crush" tactical team was conducting a shakedown of Logan's cell house. (Doc. 70-1 at 2). While their cells were inspected, the inmates were placed in handcuffs and escorted to the prison chapel. *Id*. As Logan was waiting in the chapel for the Orange Crush team to finish its shakedown, he requested medical assistance from Defendant Lori Cady. *Id*. Logan was experiencing acid reflux at the time, and he wanted to receive some water or his acid reflux medication.[1] (Doc. 70-1 at 3).

After Logan asked for help, Cady responded by telling him, "shut up and turn around boy." (Doc. 70-1 at 2). Logan was offended and told Cady that he wasn't a "boy." *Id*. Defendant Sgt. Frank Eovaldi overheard this exchange, immediately grabbed Logan, and escorted him away from the other inmates. (Doc. 70-1 at 2-3). Eovaldi then tripped Logan to his

---

[1] Logan's medical records indicate that on July 7, 2012, he received a six-month prescription for Prilosec, a medication used to treat acid reflux. (Doc. 70-3 at 1). In addition, Logan received a six-month prescription for Tylenol because he was suffering from a hiatal hernia. *Id.*

knees and punched him in the back of his head seven times while saying that he was hitting Logan because he was a boy. (Doc. 70-1 at 3).

After the assault, Logan was escorted to a cell in the "north two [segregation] unit." *Id*. Sometime later that day, he was taken to the prison Health Care Unit ("HCU"). *Id*. Although the record is unclear as to what occurred around this time, Logan testified that he recalls waking up in the HCU to Defendant Mayberry, a Correctional Officer, twisting and squeezing his handcuffs. (Doc. 70-1 at 4). Thereafter, Defendant Dr. Shepherd arrived to conduct an examination. *Id*. Logan testified that "Dr. Shepherd looked at [him], looked at [his] face, looked at [his] wrist and sent [him] to get X-rays [for his] wrist." *Id*. No fractures were noted in the X-rays. (Doc. 70-3 at 3). Logan further testified that he told Dr. Shepherd about most, if not all, of his medical issues. However, because correctional officers were also in the room, he is unsure whether he stated that Eovaldi caused his injuries. (Doc. 70-1 at 8). Logan's medical records dated "8/20/12 10:20 AM" state that the injuries resulted from a fall. (Doc. 70-3 at 2).

Following the X-rays, Mayberry escorted Logan out of the HCU and into the shower area in one of the cell houses. (Doc. 70-1 at 4). Mayberry then told Logan that his personal property would be thrown away and that his television would be destroyed if he told anyone that Eovaldi assaulted him. *Id*. As Logan was waiting in the shower area to be placed in a new cell, he told Mayberry that he still intended to alert others about Eovaldi's actions. (Doc. 70-1 at 5). Mayberry then opened the shower gate, punched Logan in the nose, locked the gate on Logan, and walked away. *Id*. After Mayberry left, Logan told an unknown correctional Lieutenant about what had occurred. *Id*. That Lieutenant, however, did not stop to help. *Id*.

Logan's medical records indicate that around 7:30 PM that same day, Logan requested medical attention from a medical technician while she was distributing medication to the gallery.

3

(Doc. 70-3 at 4). Logan inquired, "Medtech, can I talk to you?" He then told her that "my nose hurts [and] I think it might be broken." *Id*. The medical technician noted the encounter in Logan's medical records and scheduled him to see a doctor. *Id*.

Logan was again examined by Dr. Shepherd the following afternoon on August 21, 2012. (Doc. 70-1 at 8). At the examination, Logan told Dr. Shepherd that Mayberry broke his nose. *Id*. Dr. Shepherd told Logan "don't say that" and sent him to have X-rays taken of his face. *Id*. Medical records indicate that the X-rays were sent to an offsite physician for examination, who diagnosed Logan as having a "non displaced nasal bony fracture" — a broken nose. (Doc. 70-3 at 6). Dr. Shepherd's notes from the examination state that Logan "injured [his] nose after being evaluated yesterday [for] 'falling down'." (Doc. 70-3 at p. 5).

Logan next visited the Menard HCU on August 25, 2012. (Doc. 70-1, p. 8). He was examined by Nurse Practitioner Kohring. *Id.* According to the medical records, Logan told Kohring that he had been hit in the face on Monday of that week and was experiencing pain and bleeding in his nose. (Doc. 70-3 at 7). Kohring observed bruising around his nose and issued a prescription for pain. *Id*.

On September 2, 2012, Logan returned to the Menard HCU for further examination. (Doc. 70-3 at 8). He told Nurse Oakley that he was experiencing headaches, nosebleeds and possibly a pinched a nerve. *Id*. He also mentioned that he ran out of his Tylenol and Motrin prescriptions. *Id*. Oakley gave Logan some Motrin and dismissed him. *Id*.

Logan was next scheduled to visit the Menard HCU on September 7, 2012. The prison, however, was on lockdown at that time and Logan was unable to visit the HCU again until September 24, 2012. (Doc. 70-3 at 9). At that visit, Logan was examined by Dr. Shepherd. *Id*. He told Dr. Shepherd that his wrists continued to hurt and that he was experiencing headaches.

4

*Id*.  Dr. Shepherd continued the Tylenol prescription and issued Logan a "front cuff permit." *Id*. According to Dr. Shepherd's affidavit attached to his motion for summary judgment, the September 24th examination was the last time that he treated Logan. (Doc. 70-2 at 3). Logan filed this lawsuit on November 12, 2013. (Doc. 1).

## DISCUSSION

Rule 56(a) of the Federal Rules of Civil Procedure provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." At the summary judgment phase, all facts and reasonable inferences must be viewed "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court shall "neither come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Logan alleges that Cady, motivated by racial animus, was deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments. The Supreme Court has held that the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). Prison officials violate the Eighth Amendment if they demonstrate deliberate indifference to prisoners' serious medical needs. *Id.* To succeed on his claim against Cady, Logan must establish two elements: (1) that he suffered from a serious medical need; and (2) that Cady was deliberately indifferent to it. *See id.*

Cady argues that Logan cannot establish either element. As to the first element, the Court disagrees. Logan has presented sufficient evidence from which a reasonable jury could

5

conclude that his acid reflux (also known as gastroesophageal reflux disease or "GERD") was a serious medical need. *See Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) (summary judgment for prison doctor was improper when prisoner plaintiff presented evidence that he was not properly receiving medication for GERD); *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (genuine dispute of material fact existed as to prisoner's Eighth Amendment claim when his chronic acid reflux went untreated for two months).

However, Cady is entitled to summary judgment because her conduct did not rise to the level of "deliberate indifference."  Not all serious medical conditions constitute medical emergencies that require immediate medical attention, and most medical problems may be adequately addressed through the normal prison sick call procedures.  Logan's acid reflux is one such condition. Thus, Cady's refusal to provide on the spot immediate medical attention did not violate his Eighth Amendment rights.  With that said, if Cady in fact used the term "boy" in referring to Logan, that conduct is reprehensible. The use of racially derogatory terms serves no penological purpose.  Nevertheless, Cady is entitled to summary judgment on Logan's Eighth Amendment claim against her.  Because no constitutional violation occurred, the Court does not need to address Cady's qualified immunity argument.

Logan also asserts that Dr. Shepherd was deliberately indifferent to his serious medical needs.  Dr. Shepherd does not dispute (for the purposes of summary judgment) that Logan was suffering from a serious medical need during this period, but argues that his actions do not constitute deliberate indifference.  Deliberate indifference exists when a "[prison] official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Ordinary

negligence, however, is insufficient to establish deliberate indifference. The Seventh Circuit has repeatedly held that "the Eighth Amendment is not a vehicle for bringing claims for medical malpractice," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), nor will "mere disagreement with a doctor's medical judgment" trigger Eighth Amendment liability. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Further:

> A prisoner may establish deliberate indifference by demonstrating that the treatment he received was "blatantly inappropriate." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir.2005) (quoting *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996)). Making that showing is not easy: "A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir.2008) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir.1998)). Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir.2006); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Logan asserts that he should have received additional painkillers and that more should have been done to treat his wrists. Dr. Shepherd treated Logan on three occasions; August 20, August 21, and September 24, 2012. On August 20, Dr. Shepherd examined Logan and ordered that wrist X-rays be taken. One day later, Dr. Shepherd again examined Logan and ordered that X-rays be taken of his nose. Logan was examined by other healthcare professionals at the HCU on August 25 and September 2, 2012. Due to a prison wide lockdown, Logan was not seen again in the HCU until September 24, 2012. At that exam, Dr. Shepherd prescribed Logan Tylenol and issued him a one year front cuff permit. Dr. Shepherd did not prescribe additional pain medication during August exams because Logan had already received a six month prescription for Tylenol on July 7, 2012. (Doc. 70-2).

When Dr. Shepherd's medical treatment of Logan is viewed under the circumstances, no reasonable jury could find that it was "blatantly inappropriate" and ran afoul of Logan's Eighth

7

Amendment rights. Logan also asserts that during the August examinations, he only saw Dr. Shepherd quickly glance at his medical file, and so Dr. Shepherd would not have known about the July 7, 2012 Tylenol prescription. In short, Logan argues that Dr. Shepherd's purported decision to not prescribe other painkillers is a sham justification created long after the events transpired. However, Logan's claims as to what Dr. Shepherd did or did not know about his medical file are speculative at best.

## CONCLUSION

For the foregoing reasons, Defendants Lori Cady and Dr. John Shepard's Motions for Summary Judgment are granted. Plaintiff Eugene Logan shall proceed solely on his claims against Defendants Eovaldi and Mayberry.

**SO ORDERED**

**DATED: August 26, 2016**

**/s/ Staci M. Yandle**
**The Honorable Staci M Yandle**
**UNITED STATES DISTRICT JUDGE**